IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARLEMA BEY,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **RELIANCE STANDARD LIFE** | : | No.  16-2326 |
| **INSURANCE COMPANY,** | : | |
| *Defendant*. | : | |

## **M E M O R A N D U M**

PRATTER, J.                                                                                            FEBRUARY 16, 2017

After receiving occupational disability payments for two years as a result of injuries suffered in an auto accident, Darlema Bey filed this action against Reliance Standard Life Insurance Company to challenge its denial of long term disability benefits beyond the initial two-year period.  The parties have filed cross-motions for summary judgment[1] based on the administrative record.  After reviewing the motions, arguments, and the administrative record, the Court will grant Reliance's motion and deny Ms. Bey's motion.

## BACKGROUND

Ms. Bey is a former employee of Virtua Health, which offered an employee benefit plan that included long-term disability coverage through Reliance.  Ms. Bey was injured in a car accident in August 2011.  By meeting the Policy's initial definition of "total disability"—requiring that she be disabled from performing material duties of her regular occupation—she was awarded long-term disability benefits under the Policy.  A.R. 59-60.  These benefits were paid for a period of two years, from February 4, 2012 to February 4, 2014.  To receive benefits

---

[1] Reliance's motion to dismiss is also before the Court.  The arguments presented in Reliance's motion for summary judgment overlap and/or cross-reference those made in its motion to dismiss.  Because the Court will grant summary judgment for Reliance, the motion to dismiss is moot.

1

beyond the initial two year period, however, Ms. Bey was required to satisfy a different definition of "total disability" under the Policy. The post-two year definition of "total disability" under the Policy is:

> [A]fter a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of *any occupation*. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

A.R. 11. Further, the Policy included a maximum 24-month limitation for disorders caused, or contributed to, by mental or nervous disorders. *See* A.R. 24. In other words, in order for Ms. Bey to receive benefits beyond the first two years, she was required to show (1) that she was incapable of performing *any occupation* she was otherwise qualified for and (2) that a mental or nervous disorder did not contribute to her disability.

To determine whether Ms. Bey could meet the heightened Policy definitions requirements to receive benefits beyond two years, Reliance obtained and reviewed information in Ms. Bey's claim file. By letter dated December 30, 2014, Reliance notified Ms. Bey that her claim was denied because Reliance had concluded, among other things, that she had transferrable skills that enabled her to perform other occupations.[2] Moreover, Ms. Bey's ongoing treatment for post-traumatic stress disorder triggered the 24-month maximum limitations on disorders to which mental or nervous disorders contributed. A.R. 198–203. The letter also explained that, while Ms. Bey was eligible for benefits through February 4, 2014, her benefits were subject to offset by Social Security disability benefits and the offset applied to payments after August 4, 2013.

---

[2] In April 2014, John Zurick performed a Residual Employability Analysis to determine alternate occupations Ms. Bey would be capable of performing. Reliance determined that she was capable of performing at least five alternate, sedentary occupations. A.R.1337–38.

Following the adverse determination, Ms. Bey retained counsel and sent several letters to Reliance requesting all information that Reliance relied upon to make its determination. In correspondence between the parties throughout the first half of 2015, Reliance acknowledged that it did not have access to certain medical information while formulating and reaching its initial decision. Also, in addition to other medical appointments, in May 2015, Ms. Bey independently obtained a functional capacity evaluation ("FCE").

Ms. Bey formally appealed her termination of benefits on June 15, 2015, and a flurry of communications followed. Reliance requested an independent medical examination ("IME")[3] in October 2015, and Ms. Bey refused to appear for the examination. Therefore, instead of relying on an IME, Dr. Kelly Allen, reviewed Ms. Bey's medical records and issued a report. Dr. Allen concluded that she "[could] not adequately address the presence or absence of impairment as of 2/4/2014 as [she] [was] not . . . provided the ability to evaluate the claimant." After she reviewed the records, she concluded that "there were no objective findings" as to the presence of an impairment. A.R. 2563-64. Dr. Allen concluded that Ms. Bey would be able to work on a full-time basis, sitting for seven to eight hours and standing for one to two hours. She also noted that Ms. Bey suffered from post-traumatic stress disorder.

Reliance upheld its decision to deny benefits beyond February 2014 in a letter dated January 22, 2016. A.R. 236–45. It explained that Ms. Bey had not met her burden under the Policy to show total disability. The letter detailed that Danielle Ager, Psy.D. performed neuropsychological testing, which Reliance reviewed along with updated reports from Dr. Sackstein, Dr. Matalon, and Dr. Pressman. Reliance again concluded that depression and anxiety played a role in Ms. Bey's condition and noted inconsistencies with respect to Ms. Bey's

---

[3] Reliance had previously requested an IME in June 2014 when it was conducting its initial review. Ms. Bey claimed that she was unable to attend due to surgery, and Reliance concluded that her surgery would negate the need for an IME at the time.

physical "weakness." Consequently, Reliance concluded that the heightened definition of total disability and the mental/nervous disorder provision barred additional benefits.

Reliance referred to the IME request in October 2015 and clarified that it had the right to request an IME "as often as it is reasonably required while a claim is pending." A.R. 241. And "failure to attend such examination is, in fact, a direct violation of the Policy, and prevents [Reliance] from obtaining an independent opinion based on an examination and review of records, as to her physical ability, or lack thereof." A.R. 242. In lieu of an IME, Reliance had Ms. Bey's claims reviewed by an independent physician, Dr. Allen, who concluded that Ms. Bey's physical complaints, while documented, did not lead to an objective finding.

Ms. Bey's complaint here alleges violations of state law for breach of contract and bad faith, as well as ERISA benefit claims and claims for statutory penalties, interest and attorney's fees. These claims were initially brought in the Pennsylvania Court of Common Pleas but were later removed to federal court on the basis of the ERISA count. Reliance answered the ERISA benefit claim and moved to dismiss the remaining claims. The parties later filed cross-motions for summary judgment.

## STANDARD OF REVIEW

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. *Se. Pa. Transit Auth. v. Pa. Pub. Util. Comm'n*, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  *Id.*

In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor.  *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).  A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden may be met by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.  Summary judgment is proper if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.

## DISCUSSION

Reliance moved for summary judgment as to all of Ms. Bey's claims.  The summary judgment briefing focused on Ms. Bey's ERISA claim and Reliance incorporated arguments made in its motion to dismiss regarding the state law claims and the ERISA penalty claim.  Although she is not explicit, Ms. Bey appears to move for summary judgment as to only her ERISA claim.

The Court finds that Ms. Bey's state law claims are preempted by ERISA and that Reliance is entitled to summary judgment in its favor in all respects.

## I.   State law claims

Ms. Bey's state law claims are preempted by ERISA.  The Third Circuit Court of Appeals has held that claims for breach of contract, breach of the implied covenant of good faith and fair dealing and breach of fiduciary duty, related to the administration of a long term disability plan governed by ERISA, are preempted by federal law.  *See Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014).  Such state law claims are expressly preempted by the ERISA statute, which states that the federal regulatory scheme "shall supersede any and all State laws insofar as they may now or hereafter related to any employee benefit plan [subject to ERISA]."  *Id.* at 293 (quoting 29 § U.S.C. 1144(a)). Ms. Bey's claims are likewise subject to conflict preemption because the state law claims duplicate, supplement or supplant the ERISA civil enforcement remedy.  *Id*. at 294.  Congress intended for the causes of action and remedies available under ERISA § 502 to be the exclusive vehicles for actions by ERISA plan participants asserting improper plan administration.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)); *Menkes*, 762 F.3d at 294.

Ms. Bey argues that Reliance owed her a fiduciary duty and that its refusal to provide a definitive statement as to whether the claims at issue were covered by ERISA now estops Reliance from claiming that ERISA has preemptive effect.  However, Ms. Bey's position is nonresponsive to the argument put forward by Reliance—namely, that the breach of contract and bad faith claims in the complaint are preempted by ERISA.  Given that preemption is expressly delineated by statute, not left to exist only by the whim or engagement of a litigant, the Court can divine no reason why Reliance's failure to take a definite position as to the applicability of ERISA prior to the lawsuit should equitably bind it from later arguing ERISA's stated preemptive effect.

6

**II.     ERISA claim**

Ms. Bey requests that the Court award her benefits under § 502(a)(1)(B) of ERISA.[4] Under § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a) (1)(B). The parties agree that the highly deferential abuse-of-discretion standard of review applies to this case. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). "Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (quoting *Adamo v. Anchor Hocking Corp.*, 720 F. Supp. 491, 500 (W.D. Pa. 1989)). "An administrator's interpretation is not arbitrary if it is 'reasonably consistent with unambiguous plan language.'" *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (quoting *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001)).

One of the factors a court should consider in determining if a plan administrator has been arbitrary or capricious is whether a conflict of interest exits such that a plan administrator both determines eligibility and pays benefits. *See Metro Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Ms. Bey urges that such a conflict exists here. Reliance does not deny that it serves a dual capacity, but contends that the conflict should only be considered to "break the tie." It also maintains that its decision was not motivated by self-interest and that it preserved the integrity of

---

[4] The Complaint does not explicitly define the specific ERISA provision invoked in this suit. Based on the allegations, the Court concludes she is invoking § 502(a)(1)(B).

7

the review as demonstrated by, *inter alia*, independent physician review of Ms. Bey's file. The Court does not find this superficial conflict determinative.

Ms. Bey also argues that procedural irregularities weigh in favor of determining that Reliance's decision was arbitrary or capricious. Examples of procedural irregularities include, for example, reversal of an administrator's position, reliance on requirements extrinsic to the plan, non-compliance the ERISA statute and the accompanying regulations, failure to address all relevant diagnoses, or failure to consider claimant's ability to perform job requirements. *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 848–56 (3d Cir. 2011).

Ms. Bey primarily argues that Reliance's determination was arbitrary and capricious because it failed to give proper credence to her treating physicians.[5] She contends that administrators may not turn a blind eye to or refuse to credit evidence from treating physicians. *See, e.g.*, *Culley v. Liberty Life Assur. Co. of Boston*, 339 F. App'x 240, 245 (3d Cir. 2009) ("[The administrator], operating under a potential conflict of interest, made decisions that disfavored the claimant at each 'crossroads,' and relied on expert opinions predicated on incomplete medical files."). The United State Supreme Court has held, however, that ERISA plan administrators need not accord special weight to a claimant's treating physician and are not required to explain "when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Ms. Bey points to reports from some of her treating physicians showing, in one form or another, that Ms. Bey was still experiencing pain and difficulties from the 2011 accident. However,

---

[5] The crux of Ms. Bey's argument is that Reliance improperly reviewed her claim. However, she also contends that Reliance treated the same facts inconsistently during its review and did not comply with ERISA procedures or provide adequate notice at certain points leading up to the complaint in this Court. Indeed, inconsistent treatment of facts should be viewed with suspicion. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir. 2000). And, of course, ERISA outlines a host of procedures and requirements with which plan administrators must comply. Ultimately, though, the Court does not find any of the alleged inconsistent treatment of facts to be arbitrary or capricious, and Reliance points to evidence in the record showing its compliance with the very ERISA requirements Ms. Bey argues it disregarded.

pursuant to *Nord*, Reliance was not required to either weigh Ms. Bey's treating physician's opinions in a particular manner, or to a particular extent, or to articulate its manner of considering evidence.[6] Based on the totality of medical information Reliance reviewed, it concluded that Ms. Bey's physical condition did not preclude her from performing *any* occupation.

Ms. Bey also argues that Reliance should not have relied on the in-house vocational report determining that she was capable of performing other occupations because the suggested alternate occupations involved frequent sitting, which she contends she cannot do. In *Havens v. Cont'l Cas. Co.*, 186 F. App'x 207, 213 (3d Cir. 2006), the Court of Appeals concluded that an administrator "may reasonably rely on its vocational experts to help it identify alternate occupations, but it is not rational to defer to such experts in the absence of a threshold indication that their conclusions . . . are the product of reliable principles and methods applied reliably to the facts of the case." In *Havens*, the defendant did not make a determination as to either the claimant's capacity or the alternate occupation's requirements. That is not the case here. The denial letter explained Reliance's understanding of Ms. Bey's limitations, and there is no evidence that Mr. Zurick's report was anything other than the "product of reliable principles and methods applied reliably to the facts of the case." While there may be disagreement over the suitability of alternate occupations, the Court cannot say that Reliance was arbitrary or capricious in relying on the report.

---

[6] Neither was Reliance required to defer to Ms. Bey's Social Security disability benefit determination. *Burk v. Broadspire Servs., Inc.*, 342 F. App'x 732, 738 (3d Cir. 2009) ("[T]he Social Security Administration's determination of 'disability' is not binding in the instant case, where the determination is governed by the plan terms rather than statute.").

9

Ultimately, an independent physician, Dr. Allen, reviewed Ms. Bey's records for Reliance and concluded that she was unable to make an objective finding of total disability.[7] A.R. 2563-64. Given this thorough review by an independent physician, the Court cannot conclude that Reliance acted arbitrarily or capriciously in weighing Ms. Bey's treating physicians' statements. Furthermore, there is evidence in the administrative record supporting Reliance's conclusion that a mental or nervous disorder contributed to her condition, so the Court cannot deem Reliance's determination on that issue, which would invoke the Policy's 24-month limitation, to be arbitrary or capricious.

Finally, Ms. Bey seeks penalties from Reliance for failure to adequately respond to the Ms. Bey's written requests for certain information regarding her claim. Under ERISA, a benefit plan's "administrator" is required to produce certain documents within 30 days of a written request from a beneficiary, and may be subject to penalties for the administrator's failure to do so. *See Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 58 (1st Cir. 2014) (citing 29 U.S.C. §§ 1021(a), 1132(c)(1)(B)). Under the statute the "administrator" is defined as

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan

---

[7] The importance and role here of Dr. Allen's independent review is underscored by the fact that Ms. Bey did not submit to an IME, notwithstanding Reliance's request. Aside from its position that her medical records generally support its decision to terminate benefits, Reliance urges that Ms. Bey's refusal to attend an IME bars her ERISA claim. *See, e.g.*, *Talasnik v. Mellon Bank Long Term Disability Plan*, No. CIV.A. 01-5899, 2003 WL 21956419, at *4 (E.D. Pa. July 9, 2003) ("[P]laintiff lost her eligibility for benefits under the Plan when, through counsel, she refused to submit to [an independent medical examination]."). The administrative record shows that Reliance made a request for an IME in October 2015. Ms. Bey argues that, under the Regulations, the claimant must be notified within 45 days of the request for review, unless the "plan administrator" determines that "special circumstances" demand an extension. Ms. Bey contends that Reliance's request for an IME on October 21, 2015— 83 days after its adverse benefits review was due—was late, and that there's no statutory authority for Reliance's position that request for an IME will toll statutory timeframes. Reliance takes the position that under the ERISA regulations, if a decision on an appeal is not made within the 45 day time frame, the claim is deemed to be exhausted. *See* 29 C.F.R. § 2560.503-1(l). Reliance contends that the claim was still "pending" when it requested the IME in October 2015, and under the Policy, Ms. Bey was required to attend an IME while the claim is "pending," even during an appeal. Ms. Bey did not file suit until after Reliance's second request for IME. Therefore, her claim was still pending at the time she refused to submit to an IME. Ultimately, the Court need not opine on the effect of Ms. Bey's failure to attend the IME because the record reasonably supports Reliance's conclusion that a mental and/or nervous disorder contributed to her condition and that Ms. Bey failed to show she was totally disabled.

>sponsor; or (iii) in the case of a plan for which an administrator is not so designated an a plan sports cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A); *see Groves v. Modified Ret. Plan for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 116 (3d Cir. 1986). The complaint refers to Reliance as a "fiduciary" of the plan, not the plan's administrator. While it is not entirely clear who the administrator is, Reliance cannot be sued as a *de facto* plan administrator simply because it responded to counsel's requests. *See, e.g.*, *Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 60 (1st Cir. 2014) ("[T]he mere fact that Reliance Standard responded to a letter seeking documents relevant to the benefit plan does not make Reliance Standard the *de facto* 'administrator.'").

Furthermore, Ms. Bey seeks statutory penalties on the basis of alleged violations of a regulation, not a statute. Count IV of the Complaint references two provisions—29 U.S.C. § 1132(c), which is the statutory penalty provision, and 29 C.F.R.§ 2560.503-1, which is a regulation detailing ERISA claims procedures. The Third Circuit Court of Appeals held in *Groves v. Modified Ret. Plan for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries*, that § 502(c), codified at 29 U.S.C. § 1132(c), does not authorize sanctions for violations of agency regulations. 803 F.2d 109, 113 (3d Cir. 1986) ("[S]anctions may not be imposed on a plan administrator for his failure to fulfill obligations imposed only by regulations promulgated pursuant to ERISA."). The Court explained that § 502(c) of ERISA only authorizes sanctions for breach of duties imposed by "this subchapter," and reasoned that this only referred to obligations identified in statute—not in regulation. *Id.* at (*citing* 29 U.S.C. § 1132(c)(1)). So, even if the Court were to consider Reliance a plan administrator, penalties would not be

11

appropriate where, as here, a regulation formed the basis of the alleged violation and the demand for sanctions.

## CONCLUSION

For the foregoing reasons, the Court will deny Ms. Bey's motion for summary judgment and grant Reliance's. An appropriate order follows.

BY THE COURT:

_S/Gene E.K. Pratter_
GENE E.K. PRATTER
United States District Judge